## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 14 2016, 9:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Derick W. Steele | Gregory F. Zoeller |
| Deputy Public Defender | Attorney General of Indiana |
| Kokomo, Indiana | |
| | Christina D. Pace |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew Weeks, | October 14, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 34A02-1603-CR-528 |
| v. | Appeal from the Howard Superior Court |
| State of Indiana, | The Honorable George A. Hopkins, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 34D04-1507-F1-81 |

**Baker, Judge.**

[1] Matthew Weeks appeals the sentence imposed by the trial court after Weeks was convicted of Level 2 felony voluntary manslaughter. Weeks argues that the sentence is inappropriate in light of the nature of the offense and his character. Finding the sentence not inappropriate, we affirm.

## Facts

[2] On the evening of July 2, 2015, forty-two-year-old Weeks went to William Shadle's residence to make contact with Shadle's wife, Kandice, with whom Weeks was involved in an intimate relationship. Weeks peered through the northwest window of Shadle's home. Shadle, who was seventy-four years old, saw Weeks looking through the window and confronted him through the screen door.

[3] Weeks claimed that Shadle opened the screen door and threw hot water on him. Weeks, angry, entered the residence through the side door. According to Weeks, Shadle confronted him with a knife. Weeks knocked the knife from Shadle's hand and repeatedly struck Shadle in the face, mouth, and ribs, knocking Shadle to the ground and rendering him immobile and unresponsive. Weeks fled the scene. Witnesses who had observed Weeks enter and then flee the residence went to check on the welfare of the occupants. They found Shadle unconscious, face-down, in a pool of blood, and called 911. Shadle died on July 30, 2015, from the injuries inflicted by Weeks.

[4] On July 7, 2015, the State charged Weeks with Level 1 felony burglary resulting in serious bodily injury. On August 11, 2015, after Shadle's death, the State

amended the charging information to include a charge of Level 1 felony murder. On February 5, 2016, Weeks reached a plea agreement with the State, agreeing to plead guilty to Level 2 felony voluntary manslaughter in exchange for dismissal of the remaining charges. At the sentencing hearing, which occurred the same day, the trial court sentenced Weeks to twenty-eight years imprisonment. Weeks now appeals.

## Discussion and Decision

[5] Weeks's sole argument on appeal is that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[6] Weeks was convicted of one Level 2 felony, meaning that he faced a sentence of ten to thirty years imprisonment, with an advisory term of seventeen and one-half years. Ind. Code § 35-50-2-4.5. The trial court imposed a sentence of twenty-eight years imprisonment.

Turning first to the nature of the offense, Weeks was having an extramarital affair with Shadle's wife and went to Shadle's residence to find her. When Shadle found Weeks staring through the window of his home, he threw hot water on Weeks. Rather than retreat, however, Weeks opened the door, entered the house, knocked a knife out of Shadle's hand, and then administered a fatal beating to the elderly, unarmed man. Weeks then left Shadle helpless in a pool of his own blood. While this offense is not, perhaps, the worst of the worst example of voluntary manslaughter, it does demonstrate a chilling capacity for violence and disregard for the well-being of others.

As to Weeks's character, the significance of his criminal history cannot be overstated. Not only does Weeks have prior convictions for neglect of a dependent resulting in serious bodily injury, theft, and conversion, but he also has a prior conviction for *voluntary manslaughter*. And at the time he was sentenced in this case, he was facing charges for domestic battery, invasion of privacy, intimidation, and harassment. He attempted, at sentencing, to blame his actions on Kandice, which also reflects extremely poorly on his character. It is readily apparent that Weeks is a violent person with no remorse for his actions and no respect for the rule of law or his fellow citizens. Therefore, we do not find the sentence imposed by the trial court to be inappropriate in light of the nature of the offense and Weeks's character.

The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.